UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re                                              :        Chapter 7

EUGENE CICCIMARO                   :

      Debtor                          :        Bankruptcy No. 03-35430bif

................................................

MEMORANDUM

................................................

        The former chapter 7 debtor, Mr. Eugene Ciccimaro, filed a motion on June 5, 2006 to reopen his closed chapter 7 case. This terse motion seeks reopening "in order that [Mr. Ciccimaro] can proceed to litigate an adversary proceeding to enforce the terms of his discharge against creditors who are violating the discharge injunction . . . ." Mr. Ciccimaro attached a copy of a complaint that he would file in this court were the case reopened. The proposed complaint would name Ms. Jacqueline F. Emore, his former mother-in-law, and Ms. Marta Emore Ciccimaro, his former spouse, as defendants.

        A hearing on that motion was scheduled for July 5, 2006. Even though there was no ruling on the motion to reopen, the court clerk docketed the proposed complaint as an adversary proceeding on June 5, 2006, Adv. No. 06-0295. A bankruptcy court has no jurisdiction over a dispute filed after a case is closed until it is reopened, because the outcome of that dispute can not possibly have an effect upon the administration of the closed case. See Cook v. Chrysler Credit Corp., 174 B.R. 321, 327 (M.D. Ala. 1994); Walnut Associates v. Saidel, 164 B.R. 487, 491 (E.D. Pa. 1994); In re Brantley, 1997 WL 74663, at *1 (Bankr. W.D. Ark. 1997) (holding that an adversary

proceeding filed after a debtor was discharged and the bankruptcy case was closed is improper); In re Cassidy, 1995 WL 661244, at *3 (Bankr. N.D. Ga. 1995).

In addition to the court clerk's premature docketing of Mr. Ciccimaro's proposed complaint as an adversary proceeding, the clerk issued a summons to Mr. Ciccimaro on June 6, 2006. Mr. Ciccimaro's counsel served the summons and complaint on the two proposed defendants on June 8, 2006, without waiting for a ruling on the pending motion to reopen. The proposed defendants, not realizing the jurisdictional problem or errors by the court clerk, filed answers in opposition to this complaint, and Ms. Emore's pleading added a counterclaim.

On July 5, 2006, Mr. Ciccimaro filed a certification requesting that his motion to reopen be granted by default. However, given my discretion on the issue of reopening, the court clerk's errors in docketing the proposed complaint and issuing a summons, and the nature of the proposed complaint along with the responses thereto, I declined to rule on the question of reopening without additional information, and so scheduled another hearing on the matter. At that additional hearing, I obtained from the parties copies of state court pleadings and orders involving these three individuals that underlie Mr. Ciccimaro's request to reopen his closed chapter 7 case.

During that hearing, with all parties participating, counsel for Ms. Emore stated that her client had been misled by the service of the complaint and summons in early June 2006, and did not appreciate that she had the right to oppose the motion to reopen this bankruptcy case. As this confusion was understandable, I set a new deadline

for opposition to reopening.[1]  Both Ms. Emore and Ms. Ciccimaro timely filed objections. Mr. Ciccimaro then responded to those objections.  Thus, presently before me is Mr. Ciccimaro's motion to reopen his chapter 7 case and two objections thereto.

I.

Before summarizing the material facts relevant to this contested matter, I note the following general principles.

Pursuant to section 350(b), "a [closed bankruptcy] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor or for other cause."  Whether to reopen a closed bankruptcy case is committed to the discretion of the bankruptcy court.  See, e.g., Donaldson v. Bernstein, 104 F.3d 547, 551 (3d Cir. 1997); Judd v. Wolfe, 78 F.3d 110, 116 (3d Cir. 1996); Matter of Case, 937 F.2d 1014, 1018 (5th Cir. 1991) ("This discretion depends upon the circumstances of the individual case and accords with the equitable nature of all bankruptcy court proceedings."); Hawkins v. Landmark Finance Co., 727 F.2d 324 (4th Cir. 1984); Matter of Becker's Motor Transportation, Inc., 632 F.2d 242, 245 (3d Cir. 1980), cert. denied, 450 U.S. 916 (1981); Urbanco Inc. v. Urban Systems Streetscape, Inc., 111 B.R. 134 (W.D. Mich. 1990).  The burden of demonstrating circumstances sufficient to justify the reopening is placed upon the moving party.  In re Cloninger, 209 B.R. 125, 126 (Bankr. E.D. Ark. 1997); In re Nelson, 100 B.R. 905 (Bankr. N.D. Ohio 1989).

---

[1] I also attempted, without success, to resolve the parties' differences in this court.

3

In seeking to reopen his chapter 7 case, Mr. Ciccimaro asserts that reopening is appropriate because it would benefit him by enforcing his chapter 7 discharge. In general, when a former debtor seeks to reopen a closed bankruptcy case, the court should consider a variety of non-exclusive factors including: the length of time that the case has been closed, see Matter of Case, 937 F.2d at 1018; whether a non-bankruptcy forum, such as state court, has the ability to determine the dispute to be posed by the debtor were the case reopened, see, e.g. In re Tinsley, 98 B.R. 791 (Bankr. S.D. Ohio 1989); In re E.A. Adams, Inc., 29 B.R. 227 (Bankr. D.R.I. 1983); In re Hepburn, 27 B.R. 135 (Bankr. E.D.N.Y. 1983); whether prior litigation in bankruptcy court implicitly determined that state court would be the appropriate forum to determine the rights, post-bankruptcy, of the parties; whether any parties would be prejudiced were the case reopened or not reopened; the extent of the benefit which the debtor seeks to achieve by reopening; and whether it is clear at the outset that the debtor would not be entitled to any relief if the case were reopened. See generally Arleaux v. Arleaux, 210 B.R. 148, 149 (B.A.P. 8th Cir. 1997), aff'd, 149 F.3d 1186 (8th Cir. 1998) (Table); In re Carberry, 186 B.R. 401, 402 (Bankr. E.D. Va. 1995) (a bankruptcy "court should not reopen a bankruptcy case where it appears that to do so would be futile and a waste of judicial resources"); In re Nelson, 100 B.R. 905, 907 (N.D. Ohio 1989):

> Finally, the court will not grant a motion to reopen when no clear benefit is shown to creditors. . . . Because no benefit will inure to Debtors' estate or their creditors, Debtors' motion should be denied.

As noted above, in a number of instances, courts have exercised their discretion not to reopen a bankruptcy case where there is a non-bankruptcy forum that may hear the dispute that serves as the basis for the request to reopen. See, e.g., In re

4

Tinsley, 98 B.R. at 791; In re E.A. Adams, Inc., 29 B.R. at 227; In re Hepburn, 27 B.R. at 135. The two objectors so contend in this dispute. They argue that the effect of the debtor's previously issued bankruptcy discharge can and should be determined in state court. Mr. Ciccimaro disagrees and asserts that this forum is more appropriate for that determination.

II.

I apply the aforementioned equitable principles to the following facts, gleaned from the court docket, documents of record in this court, documents submitted by the parties in the state court, and the oral admissions made by the parties in open court.

Mr. Ciccimaro filed a voluntary petition in bankruptcy under chapter 7 on October 20, 2003. At the time of his bankruptcy filing, he and Ms. Ciccimaro were parties to a divorce action pending in the Montgomery County Court of Common Pleas, docketed at No. 03-00043. In Mr. Ciccimaro's bankruptcy schedules, he listed his wife as a co-debtor (but not a creditor) and Ms. Emore as an unsecured creditor.[2]

On March 4, 2004, Mr. Ciccimaro received a chapter 7 bankruptcy discharge; and on March 26, 2004, his chapter 7 case was closed pursuant to 11 U.S.C. § 350(a). Prior to closing, neither Mr. Ciccimaro nor the objectors filed any complaints seeking to determine the dischargeability of any claims under section 523(a).

---

[2] The scheduled debt to Ms. Emore is not listed as a joint obligation on schedule F; nor is it listed on schedule H, which discloses the co-debtors and their obligations.

On October 25, 2004, the Ciccimaros reached an interim agreement on spousal and child support. The agreement, however, called for state court approval, but the copy of the agreement as well as a copy of the state court docket entries do not reflect that such approval was obtained. I also note that the interim agreement contained a provision in paragraph 8 preserving all claims and defenses of both parties in, <u>inter</u> <u>alia</u>, any equitable distribution, alimony or other economic issues.

On May 12, 2005, the state court entered a decree in divorce. That order further provided that a hearing would be scheduled on issues of equitable distribution of marital property, alimony, and counsel fees. The documents submitted by the parties do not reflect that any such hearing was held.

In July 2004, Ms. Emore brought suit against Ms. Ciccimaro, who is her daughter, in state court. This civil action was based upon a loan made by Ms. Emore to the Ciccimaros prior to Mr. Ciccimaro's bankruptcy filing. Ms. Emore obtained a judgment against Ms. Ciccimaro by default in the amount of $71,414.88 on March 16, 2005.

After learning of this judgment, on January 11, 2006 Mr. Ciccimaro filed an emergency petition in state court seeking to join Ms. Emore as a party in the pending divorce litigation and seeking to enjoin Ms. Emore from executing on her judgment against the proceeds of the impending sale of the marital home. He contended that the judgment amount was excessive and that his due process rights were violated by the entry of judgment against his estranged wife without notice to him and an opportunity to defend. On January 17, 2006, the state court issued an order concluding that Mr.

6

Ciccimaro's petition was not an emergency and would be scheduled for a hearing in due course.

Thereafter, Ms. Emore filed her own petition to intervene in the divorce litigation. Her petition alleged that she had lent to the Ciccimaros $65,000 to aid them in the purchase of their family residence, and mortgaged her home to obtain those funds. When the loan payments ceased, she brought suit against her daughter and obtained a judgment. She further alleged that intervention was appropriate as her daughter has no assets that are not marital assets. It appears from the pleadings that if her request to intervene were granted, Ms. Emore will request of the state court that her judgment against Ms. Ciccimaro be satisfied prior to the distribution of any funds from the parties' marital assets.

Upon the filing of Ms. Emore's petition to intervene, Mr. Ciccimaro withdrew his emergency petition. Thereafter the state court, learning that Mr. Ciccimaro had also filed a motion to reopen his bankruptcy case, deferred ruling upon Ms. Emore's petition to intervene pending the outcome of Mr. Ciccimaro's motion to reopen in this court. Thus, pending presently before state court are issues of intervention, alimony, and equitable distribution of marital property.

Finally, the parties informed me that the marital residence has been already been sold and the net proceeds of sale, $111,000, were placed in escrow, presumably awaiting some court's directive regarding the proceeds. For purposes of this motion to reopen, I note that Mr. Ciccimaro valued the Elkins Park marital residence on his

bankruptcy schedules as worth $200,000, with $195,000 in secured claims against it.[3] The debtor claimed a homestead exemption of only $5,000.

### III.

#### A.

The complaint that Mr. Ciccimaro seeks to prosecute in this forum, were the bankruptcy case reopened, alleges that Ms. Emore "asserted a right in the Divorce Action to obtain the collection of her judgment in full from the proceeds of the marital estate prior to any other distributions in the equitable distribution proceeding." Proposed Complaint, ¶ 13. In Mr. Ciccimaro's view, such recovery would "eviscerate the effect of the [bankruptcy] discharge of the Debtor's obligation to" Ms. Emore. Id., ¶ 14.

He further complains that Ms. Ciccimaro has improperly maintained in state court "that she is entitled to credit in the [equitable] distribution process light [sic] of the fact that she alone is liable for the parties' joint obligations." Proposed Complaint, ¶ 15. In Mr. Ciccimaro's opinion, such conduct by his former spouse also attempts to "eviscerate the effect of the [bankruptcy] discharge" by "requesting that the elimination of his obligation to pay these [joint] debts be considered in the equitable distribution aspects of the Divorce action." Id., ¶ 16.

---

[3]I take judicial notice, under Fed. R. Evid. 201 (incorporated into bankruptcy cases by Fed. R. Bankr. P. 9017), of the bankruptcy schedules filed. See generally In re Indian Palms Associates, Ltd., 61 F.3d 197 (3d Cir. 1995).

In his proposed complaint, Mr. Ciccimaro demands the following relief: that both Ms. Emore and Ms. Ciccimaro be held in civil contempt for violating the discharge injunction found in 11 U.S.C. § 524(a); that they both be enjoined from asserting any discharged claims in the state court equitable distribution litigation; and that they be liable for plaintiff's attorney's fees and court costs. Ms. Emore's counterclaim against Mr. Ciccimaro, were this case reopened, also seeks attorney's fees and costs, alleging that the complaint against her was not filed in good faith.

At oral argument, counsel for Mr. Ciccimaro opined that this bankruptcy court should, after reopening the case, direct the state court to distribute equally the realty proceeds held in escrow, with any satisfaction of Ms. Emore's judgment paid solely from Ms. Ciccimaro's share. His post-hearing memorandum appears to retreat somewhat from that position. He now contends:

> The Debtor begins by observing that he is not in any sense requesting this court to become involved in the equitable distribution matter in the CCP [Court of Common Pleas]. As his proposals at the July 31 2006, hearing indicate, this court can readily provide adequate relief to him by a simple, short order that allows the CCP proceedings to go forward, but precludes the Defendants from making claims in violation of the discharge injunction. He submits that the court should and could enter such an order forthwith, thus bringing all of these matters to a swift conclusion.

Debtor's Memorandum at 3.

Mr. Ciccimaro also accepts that his bankruptcy discharge did not "preclude the Wife from seeking equitable distribution . . . ." Id., at 6. In Pennsylvania, a non-debtor's interest in an equitable distribution award is viewed as a property interest rather than a dischargeable debt. See, e.g., In re Ingebrethsen, 1998 WL 351730, at *4 (E.D. Pa. 1998); In re Scholl, 234 B.R. 636 (Bankr. E.D. Pa. 1999). Thus, a post-bankruptcy

9

division of marital property is not akin to enforcing a prepetition claim, but represents the establishment of the debtor's interest in property. Furthermore, it will generally be appropriate to permit that property determination to be made in the state court, which has the greatest expertise, and which may have held some prepetition hearings on the issue. See Carver v. Carver, 954 F.2d 1573, 1579 (11th Cir. 1992) ("It is appropriate for bankruptcy courts to avoid incursions into family law matters out of consideration of court economy, judicial restraint, and deference to our state court brethren and their established expertise in such matters."); In re Polliard, 152 B.R. 51, 55 (Bankr. W.D. Pa. 1993) (equitable distribution matter should be decided by state court because the court's "familiarity with equitable distribution principles far exceeds that of this Court."); In re Wilson, 85 B.R. 722, 726 (Bankr. E.D. Pa. 1988) (court abstained from hearing an equitable distribution matter).

    The objectors for their part concede that Mr. Ciccimaro has received a bankruptcy discharge, and the discharge must be respected in any subsequent state court proceeding. Ms. Ciccimaro emphasizes, however, that the state court has not yet rendered any decision regarding alimony or equitable distribution, and that she should be permitted to present all information relevant to those decisions, see generally 23 Pa. C.S.A. § 3701(b) (listing 17 factors in determining alimony, including the relative assets and liabilities of the parties); 23 Pa. C.S.A. § 3502(a) (listing 11 factors in dividing marital property, including the economic circumstances of each party), which includes her former husband's bankruptcy filing and its financial consequences upon her and upon him. Furthermore, Ms. Ciccimaro observes that this court cannot render any advisory opinions. See Coffin v. Malvern Federal Savings Bank, 90 F.3d 851 (3d Cir. 1996). Therefore, she

asserts that it is improper for this court to instruct or give guidance to the state court in adjudicating the pending divorce litigation matters before it.

B.

Mr. Ciccimaro maintains that bankruptcy courts routinely reopen closed cases to enforce the discharge injunction found in section 524(a). Debtor's Memorandum, at 4. This contention is overstated. See generally In re Apex Oil Co. Inc., 406 F.3d 538, 543 (8th Cir. 2005) (affirming the denial of a debtor's motion to reopen a closed bankruptcy case as state court was competent to interpret the scope of the debtor's chapter 11 discharge). The intersection between bankruptcy law and domestic relations law is complex, reflecting competing policy considerations. See generally In re Osting, 337 B.R. 297, 302 (Bankr. N.D. Ohio 2005). On one hand, the bankruptcy discharge entitles a debtor to a "fresh start." And the federal supremacy clause obligates state courts to uphold the effect of the discharge. See, e.g., Hogg v. Hogg, 816 A.2d 314, 319-20 (Pa. Super. 2003). But federal courts, as a matter of comity, generally conclude that "domestic relations matters . . . should properly be reserved to the state courts." In re Harrell, 754 F.2d 902, 907 (11th Cir. 1985); accord Thompson v. Thompson, 484 U.S. 174 (1988); Roberge v. Buis, 95 F.3d 42 (Table), 1996 WL 482686, at *2 (4th Cir. 1996); Caswell v. Lang, 757 F.2d 608, 610- 11 (4th Cir. 1985). Moreover, on some

11

dischargeability issues, the state court has concurrent jurisdiction with bankruptcy courts. See, e.g., Eden v. Robert A. Chapski, Ltd., 405 F.3d 582, 586 (7th Cir. 2005).

More particularly, the legal issues involved in equitable distribution are solely matters of state law, with which state court judges have far greater expertise. See, e.g., Matter of Hursa, 87 B.R. 313 (Bankr. D.N.J. 1988); Matter of Baker, 75 B.R. 120, 121 (Bankr. D. Del. 1987); see also In re Perry, 131 B.R. 763, 770 (Bankr. D. Mass. 1991). Thus, it is not surprising that there are reported decisions in which a bankruptcy court declined to reopen a closed case, where a former debtor sought to enforce the discharge injunction against a former spouse in domestic relations litigation. See In re Carter, 156 B.R. 768 (Bankr. E.D. Va. 1993); In re Danley, 14 B.R. 493 (Bankr. D.N.M. 1981); see also In re Abma, 215 B.R. 148 (Bankr. N.D. Ill. 1997). By declining to reopen, it was left to the state court to enforce the bankruptcy discharge, while also applying relevant state domestic relations law. See, e.g., In re Danley, 14 B.R. at 495-96. see generally Pa. R. Civ. P. 1030 (discharge is an affirmative defense which may be raised in Pennsylvania state court); Birdman v. Medley, 261 Pa. Super. 23 (1978).[4]

Conversely, there have been other courts that have reopened a bankruptcy case and enforced the discharge injunction in domestic relations cases. See, e.g., In re Fluke, 305 B.R. 635 (Bankr. D. Del. 2004); In re Brabham, 184 B.R. 476 (Bankr. D.S.C. 1995). Those courts that have granted motions to reopen have generally done so to

---

[4]The state court has the power, as a court of general jurisdiction, to determine the scope of the bankruptcy discharge injunction. See generally In re Watson, 192 B.R. 739, 749-50 (B.A.P. 9th Cir. 1996), aff'd, 1996 WL 330895, 116 F.3d 488 (Table) (9th Cir. 1997). Indeed, the Pennsylvania courts have done so on a number of instances. See, e.g., PNC Bank, Nat. Ass'n v. Balsamo, 430 Pa. Super. 360, 373-76 (1993), appeal denied, 538 Pa. 659 (1994); see also Buccino v. Buccino, 397 Pa. Super. 241 (1990) (interpreting in considerable detail the non-dischargeability provisions of section 523(a)(5)).

12

preclude a state court from modifying a previously entered equitable distribution decree based upon a bankruptcy discharge; however, modification of a previously entered alimony award has been viewed by them as permissible. See In re Brabham, 184 B.R. at 487:

> In this Court's view, whether the family court seeks to subsequently modify support, maintenance or alimony as opposed to a property settlement, is the paramount factor in the determination of whether such action violates a prior bankruptcy discharge.

See also In re Henderson, 324 B.R. 302 (Bankr. W.D. Ky. 2005); Collett v. Collett, 270 Neb. 722 (2005).

Two recent decisions from Pennsylvania's appellate courts involved the application of the effect of the federal discharge injunction in domestic relations cases. First, in Cohen v. Goldberg, 554 Pa. 201 (1998), the Pennsylvania Supreme Court concluded that the trial court was correct in holding that a non-debtor spouse could not offset her discharged claim against the debtor/husband's share of the marital property. Second, in Hogg v. Hogg, 816 A.2d 314 (Pa. Super. 2003), the Pennsylvania Superior Court ruled that a "state court distributing the marital estate may not reaffirm the debtor spouse's obligations set out in the couple's settlement agreement after those obligations have been discharged by the bankruptcy court." Id., at 316.

The Hogg decision involved enforcement of a property settlement agreement entered into prior to the husband's bankruptcy filing. The Cohen decision involved a state court divorce action brought after the debtor's bankruptcy case was closed. Both decisions demonstrate the ability of the Pennsylvania court system to address the scope of the bankruptcy discharge in divorce matters.

13

C.

If the issue were simply as posed by the parties, I would decline to reopen this case for a number of reasons: the case has been closed for almost 2½ years; the state court has not yet ruled upon either alimony or equitable distribution matters; there are myriad factors that must be analyzed under state law to properly resolve those issues, with which the state court has the greatest experience; the possibility that there are dischargeability issues outside of those within the exclusive jurisdiction of this court under section 523(c); my inability to provide advice to the state court; and the state court's demonstrated ability to apply the bankruptcy discharge in domestic relations matters. In short, the state court is fully competent to afford the parties complete relief for their disputes, and this court cannot. See In re Apex Oil Co., Inc., 406 F.3d at 543.

However, there is another factor, overlooked by the parties, that tips the balance toward reopening.[5]

"It is well-recognized that a bankruptcy proceeding may be reopened to administer estate assets and to determine whether additional assets may be available for creditors of the estate." In re Zinchiak, 406 F.3d 214, 224 (3d Cir. 2005). Mr. Ciccimaro stated in his bankruptcy schedules that, after deduction for three outstanding liens against the marital residence, there was only $5,000 in equity, which equity he claimed as exempt. Yet, when the property was later sold, after payment of all liens and closing costs, there are $111,000 in net proceeds remaining.

---

[5] In urging the parties to resolve their differences, I mentioned this issue at the hearing.

14

I appreciate that the former chapter 7 trustee, Howard Glassman, Esquire, closed the case without administering the realty, based upon the information found in Mr. Ciccimaro's schedules. By virtue of section 554(c), when he closed the case, the trustee statutorily abandoned the debtor's interest in the realty back to the debtor. Recent decisions, however, suggest that a bankruptcy trustee may be able to revoke this "technical abandonment" in certain limited circumstances. See, e.g., In re Woods, 173 F.3d 770 (10th Cir.), cert. denied sub nom., Woods v. Kenan, 528 U.S. 878 (1999); see also In re Zinchiak, 406 F.3d at 224:

> Moreover, the Bankruptcy Court found that Newcourt's petition had the potential to generate assets for the benefit of unsecured creditors of the Debtor's estate. This is notable considering that previously the Bankruptcy Court had concluded that there remained no equity in the residential property for the benefit of the Debtor or unsecured creditors. However, in the event that it was found that Newcourt had failed to comply with the requirements of the DJA, and its claim declared discharged and marked satisfied, additional equity in the residential property could emerge for the benefit of unsecured creditors.

At this point, I conclude only that reopening would allow a reappointed chapter 7 trustee the opportunity to investigate whether to seek a portion of the real estate sales proceeds, now held in escrow, for the benefit of the allowed unsecured creditors in this case. Upon review, the trustee may conclude that no valid claim against the proceeds exists; or I may reach that conclusion in a contested matter. See In re Tadlock, 338 B.R. 436 (B.A.P. 10th Cir. 2006).

In now reopening the case, I can, upon request of parties in interest, still permit the state court to adjudicate the outstanding domestic relations issues before it without interference from this court. Interestingly, to the extent a reappointed trustee

15

would view Mr. Ciccimaro's interest in the realty proceeds as property of the bankruptcy estate, the bankruptcy trustee may attempt to participate in the state court litigation to maximize Mr. Ciccimaro's portion. Indeed, the trustee's actions in that regard could aid Ms. Emore, who is an unsecured creditor.

Accordingly, it is the better exercise of discretion to grant Mr. Ciccimaro's motion (albeit not necessarily for the reasons he raised) and reopen this closed bankruptcy case pursuant to 11 U.S.C. § 350(b). See In re Zinchiak. An appropriate order will be entered.

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re                                                        :        Chapter 7

EUGENE CICCIMARO                               :

        Debtor                               :        Bankruptcy No. 03-35430

..................................................

ORDER

..................................................

AND NOW, this 7th day of September 2006, for the reasons stated in the accompanying memorandum, it is hereby ordered that this bankruptcy case is reopened pursuant to 11 U.S.C. § 350(b). The United States trustee shall reappoint a chapter 7 trustee forthwith to protect the interests of creditors and to insure the efficient administration of this reopened case. Fed. R. Bankr. P. 5010.

It is further ordered that a status hearing shall be held on Adversary No. 06-0295 on November 6, 2006, in Bankruptcy Courtroom #2 at 9:30 a.m. Until that status hearing, that adversary proceeding (but not the main bankruptcy case) is placed in suspense. This will afford the trustee the opportunity to investigate and decide how to administer this reopened case. Also at the status hearing, the trustee, plaintiff and defendants will be afforded an opportunity to address the appropriate disposition of the adversary proceeding.

It is further ordered that, to the extent provided by 11 U.S.C. § 362(b), the bankruptcy stay does not apply to the pending state court litigation involving the debtor.

*[signature: Bruce Fox]*

_____
BRUCE FOX
United States Bankruptcy Judge

copies to:

David A. Scholl, Esq.
Regional Bankruptcy Center of SE PA
Law Office of David A. Scholl
6 St Albans Avenue
Newtown Square, PA 19073

Carole L. Hendrick, Esq.
Attorney at Law
3927 Mill Road
Collegeville, PA 19426

Christina M. Rogomentick, Esq.
Willig, Williams & Davidson
1814 Chestnut Street
Philadelphia, PA 19103

Howard T. Glassman, Esq.
One Logan Square, 3rd Floor
Philadelphia, PA 19103

Frederic J. Baker, Esq.
Office of the U.S. Trustee
833 Chestnut Street, Suite 500
Philadelphia, PA 19107

Margaret S. Phiambolis, Esq.
1012 Bethlehem Pike, Suite 103
P.O. Box 356
Spring House, PA 19477