UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 7 |
| EUGENE CICCIMARO | : | |
| Debtor | : | Bankruptcy No. 03-35430bif |
| EUGENE CICCIMARO | : | |
| Plaintiff | : | |
| v. | : | |
| JACQUELINE F. EMORE and MARIA EMORE CICCIMARO | : | Adversary No. 06-0295 |
| Defendants | : | |

................................................

MEMORANDUM

................................................

Defendant Jacqueline F. Emore has filed a motion to dismiss the above-captioned adversary proceeding, contending either that the plaintiff seeks an advisory opinion or that the issues posed can and should be decided by the state court. Defendant Maria Ciccimaro seeks summary judgment for the same reasons. The plaintiff opposes dismissal or summary judgment, initially contending that there are material facts in dispute, that no advisory opinion is sought, and that his complaint states a cause of action which must be first resolved in this court before any further adjudication is undertaken by the parties in state court. As will be discussed below, he now maintains that this proceeding has effectively been settled and only the issue of counsel fees remains.

After hearing oral argument on these two motions, it became apparent that both defendants were relying upon documents and representations beyond those found in

the plaintiff's complaint. For the reasons stated in a memorandum dated January 16, 2007, I instructed the parties that I would consider defendant Emore's motion to dismiss as one for summary judgment, and that copies of state court pleadings and orders entered of record in an earlier contested matter (to reopen this bankruptcy case) would be considered in determining defendants' two motions for summary judgment. I also set deadlines for the parties to submit affidavits and other documents in conformity with Fed. R. Bankr. P. 7056 (incorporating Fed. R. Civ. P. 56). All three parties have submitted affidavits in support of their respective positions. Thus, properly before me are the defendants' two motions for summary judgment.[1]

I.

The following facts are undisputed.

On October 20, 2003, the debtor filed a voluntary petition in bankruptcy under chapter 7. He received a chapter 7 discharge under 11 U.S.C. § 727 on March 4, 2004. Thereupon, his bankruptcy case was closed on March 8, 2004, pursuant to 11 U.S.C. § 350(a).

On June 5, 2006—more than two years after his case was closed—the debtor sought to reopen the bankruptcy case, see 11 U.S.C. § 350(b), alleging that defendants Emore and Ciccimaro were violating the statutory discharge injunction found

---

[1] The parties were also informed that no further argument on defendants' two motions would be scheduled unless requested. No party has sought additional oral argument.

in section 524(a) by positions taken in connection with the Ciccimaros' pending state court divorce action.

During the pendency of his 2003 bankruptcy case, the debtor and Mrs. Ciccimaro were opposing parties in a divorce action in the Montgomery County Court of Common Pleas, docketed in the state court at No. 03-00043.  In Mr. Ciccimaro's bankruptcy schedules, he listed his wife as a co-debtor (but not a creditor) and Ms. Emore as an unsecured creditor.[2]

In July 2004, Ms. Emore brought suit against Ms. Ciccimaro (who is her daughter) in state court.  This civil action was based upon a loan made by Ms. Emore to the Ciccimaros prior to Mr. Ciccimaro's bankruptcy filing.  Ms. Emore obtained a judgment against Ms. Ciccimaro by default in the amount of $71,414.88 on March 16, 2005.

On May 12, 2005, the state court entered a decree in divorce.  That order further provided that issues of equitable distribution of marital property, alimony, and counsel fees would later be determined.  Prior to any such resolution, and after learning of Ms. Emore's judgment against Ms. Ciccimaro, on January 11, 2006, Mr. Ciccimaro filed an emergency petition in state court seeking to join Ms. Emore as a party in the divorce litigation and seeking to enjoin Ms. Emore from executing on her judgment against the proceeds of the impending sale of the marital home.

Thereafter, Ms. Emore filed her own petition to intervene in the divorce litigation.  Her intervention petition alleged that she had lent to the Ciccimaros $65,000 to

---

[2]The scheduled debt to Ms. Emore is not listed as a joint obligation on schedule F; nor is it listed on schedule H, which discloses the co-debtors and their obligations.

Case 06-00295-bif    Doc 38    Filed 03/12/07    Entered 03/14/07 09:54:12    Desc Main
Document    Page 4 of 20

aid them in the purchase of their family residence, and mortgaged her home to obtain those funds. When the loan payments ceased, she brought suit against her daughter and obtained a judgment. She further asserted that intervention was appropriate as her daughter has no assets that are not marital assets. Upon the filing of Ms. Emore's petition to intervene, Mr. Ciccimaro withdrew his own petition to join Ms. Emore as a party.

At oral argument, it was undisputed that the marital residence had been sold after the original closure of Mr. Ciccimaro's bankruptcy case, and the net proceeds of sale, $111,000, were placed in escrow. The parties' present dispute concerns these funds, which are acknowledged by all to be marital property subject to equitable distribution under Pennsylvania law. See 23 Pa. C.S.A. § 3501(a) (defining marital property, with certain exceptions, as "all property acquired by either party during the marriage and the increase in value of any nonmarital property [during the marriage]").

In seeking to reopen this bankruptcy case and proceed with litigation to enforce the discharge injunction, Mr. Ciccimaro was concerned that if Ms. Emore's petition to intervene were granted, she would request of the state court that her judgment against Ms. Ciccimaro be satisfied prior to the equitable division of funds from the parties' marital assets: viz., the realty sale proceeds held in escrow. Such a distribution method, the debtor believed, would obligate his equitable distribution portion of the realty sale proceeds to be used to repay a portion of Ms. Emore's discharged debt, in violation of 11 U.S.C. § 524(a).

For reasons previously detailed in a memorandum dated September 7, 2006, I felt that the state court judicial system was capable of addressing this issue—see, e.g., Cohen v. Goldberg, 554 Pa. 201 (1998); Hogg v. Hogg (In re Hogg), 816 A.2d 314

4

(Pa. Super. 2003)—and thus could provide Mr. Ciccimaro any relief under section 524(a) to which he might be entitled. Therefore, I was disinclined to reopen his closed bankruptcy case solely for an adjudication regarding the scope of the bankruptcy discharge injunction as it applied to equitable distribution. See generally In re Apex Oil Co., Inc., 406 F.3d 538, 543 (8th Cir. 2005).

However, in his bankruptcy case, Mr. Ciccimaro had disclosed that there was only $5,000 in equity in the marital residence. Yet, after the case was closed, the realty was sold yielding $111,000 in net proceeds. In order to allow a bankruptcy trustee to investigate whether the bankruptcy estate had any claim to those escrowed sale proceeds, coupled with the issue of the scope of the discharge injunction, I granted the debtor's motion to reopen the case.

After the opportunity to investigate, the chapter 7 trustee disclaimed any interest or claim in the realty sale proceeds.

Mr. Ciccimaro commenced this adversary proceeding in his reopened case by filing a complaint, asserting that the lawsuit by Ms. Emore against Ms. Ciccimaro and the subsequent entry of default judgment was "collusive," Complaint, ¶¶ 10-11, and that Ms. Emore's petition to intervene in the divorce action was designed "to obtain the collection of her judgment [against Ms. Ciccimaro] in full from the proceeds of the marital estate," which would "eviscerate the effect of the [bankruptcy] discharge . . . ." Id., ¶¶ 13-14. Furthermore, the complaint asserts that Ms. Ciccimaro "seek[s] to eviscerate the effect of the [bankruptcy] discharge . . . by requesting [in state court] that the elimination of his obligation to pay . . . [joint] debts be considered in the equitable distribution aspects of the Divorce Action." Id., ¶ 16. Based upon these allegations, Mr.

5

Ciccimaro sought a ruling that the defendants were in civil contempt and that he, as plaintiff, was entitled to an injunction, damages, costs and attorney's fees from the defendants. Complaint, ¶ 19.

Ms. Ciccimaro then filed an answer to the complaint, denying that she collusively participated in any state court lawsuits and that any actions taken in state court by her violated section 524 of the Bankruptcy Code. Ms. Emore filed a similar response denying any collusion or improper conduct in state court. She also filed a counterclaim asserting that the plaintiff's complaint was filed in bad faith (to which the plaintiff filed an answer denying any bad faith). Her counterclaim sought attorney's fees and costs.

In support of their summary judgment motions that this adversary proceeding be dismissed, the defendants have now submitted affidavits. Ms. Emore affirms that her motion to intervene in the state court litigation was filed as "a direct result of [the debtor's] Motion to Add me as a Party Defendant," and was intended to afford her notice of any distributions to Ms. Ciccimaro. Emore Affidavit, ¶¶ 10, 12. She further avers that if she were granted leave to intervene, she would seek repayment of her outstanding judgment only from Ms. Ciccimaro's award of marital property under equitable division. Id., ¶ 13. Furthermore, Ms. Emore is agreeable to the dismissal of her counterclaim "provided a motion for summary judgment is granted" resulting in the dismissal of Mr. Ciccimaro's complaint. Id., at 16.

Ms. Ciccimaro has filed an affidavit averring that she is "precluded from requesting that the State Court obligate my husband . . . to pay for or be responsible for the debts that were discharged in his Bankruptcy case as to do so would be in violation of his Bankruptcy discharge[.]" Ciccimaro Affidavit, ¶ 3. She does "intend" to request that

6

the state court consider all of her outstanding debts when adjudicating her claims for equitable distribution, alimony and counsel fees. Id., at ¶ 4.

Mr. Ciccimaro has responded to these two summary judgment motions with an affidavit from his state court divorce attorney, Margaret S. Phiambolis, Esquire. She avers that at a state court hearing in December 2005, Ms. Ciccimaro submitted a statement requesting that the state court award her all of the equity in the marital residence "to offset the debt that husband is no longer responsible for as a result of his bankruptcy filing." Phiambolis Affidavit, ¶ 8.2. She further asserts that the intervention petition filed by Ms. Emore sought relief to protect her interests in all the marital assets. Id., ¶ 8.4. Ms. Phiambolis also asserts that Ms. Emore sought to have her attorney "be one of the attorney escrow agents for the undistributed proceeds from the sale of marital home." Id., ¶ 8.7.

Plaintiff's state court counsel further avers that she considers the representations made by the defendants in their affidavits in support of summary judgment to be material changes from their earlier positions. Id., ¶ 13.

Finally, after these affidavits were submitted, plaintiff's counsel submitted (via letter dated February 27, 2007) a copy of an order dated February 20, 2007, by which the Montgomery County state court, "after a conference with all attorneys," denied Ms. Emore's motion to intervene.

II.

A.

In general, while the automatic stay is in effect, 11 U.S.C. § 362(a)(1) and (a)(6) enjoin any litigation efforts against a chapter 7 debtor involving prepetition claims. Section 362(a)(2) enjoins the enforcement of prepetition judgments. By virtue of section 362(c)(2)(C), however, the automatic stay enjoining creditor collection activities on prepetition debts terminates upon the entry of a chapter 7 discharge order. See, e.g., Brown v. Pennsylvania State Employees Credit Union, 851 F.2d 81, 84 (3d Cir. 1988); In re Rentas, 80 B.R. 25, 26 (Bankr. S.D.N.Y. 1987).

The entry of a bankruptcy discharge, although it terminates the automatic stay created by section 362(a), gives rise to another statutory injunction. Pursuant to 11 U.S.C. § 524(a), the entry of a discharge, inter alia, enjoins creditors from all actions to collect discharged obligations. See, e.g., Hedges v. Resolution Trust Corp., 32 F.3d 1360, 1363 (9th Cir. 1994), cert. denied, 514 U.S. 1082 (1995); In re Ellsworth, 158 B.R. 856, 858 (M.D. Fla. 1993).

Unlike the automatic stay, which contains the provisions of section 362(h), Congress has not provided a statutory mechanism for the enforcement of the discharge injunction. Therefore, courts have long relied upon the common law remedy of civil contempt. See, e.g., Walls v. Wells Fargo Bank, N.A., 276 F.3d 502, 507 (9th Cir. 2002); Matter of National Gypsum Co., 118 F.3d 1056, 1063 (5th Cir. 1997); Matter of Rosteck, 899 F.2d 694 (7th Cir. 1990); Bynum v. Cavalry Portfolio Services, L.L.C., 2006 WL

1401619, at *2 (N.D. Okla. 2006); In re Elias, 98 B.R. 332 (N.D. Ill. 1989); In re McNeil, 128 B.R. 603, 607 (Bankr. E.D. Pa. 1991) ("Enforcement of § 524 may include holding violators in contempt of court for attempts to collect discharged debts."); In re Wagner, 87 B.R. 612 (Bankr. C.D. Cal. 1988). It has been accepted that the power to address such infractions must exist or the statutory injunction found in section 524(a) would be hollow. See generally In re Meyers, 344 B.R. 61, 64-65 (Bankr. E.D. Pa. 2006).

In the context of enforcement litigation under section 524(a), if the creditor knew of the debtor's bankruptcy filing and knew of the entry of discharge before she commenced or continued prosecuting an action to collect a discharged, prepetition debt, then civil contempt sanctions, including injunctive relief, compensatory damages and attorney's fees, may be warranted. See In re Elias, 98 B.R. at 337; In re Meyers, 344 B.R. at 66; In re Matthews, 184 B.R. 594, 599 (Bankr. S.D. Ala. 1995); In re Penrod, 163 B.R. 62, 63 (Bankr. W.D. Pa. 1994); In re McNeil, 128 B.R. 603, 607 (Bankr. E.D. Pa. 1991); In re Rhyne, 59 B.R. 276 (Bankr. E.D. Pa. 1986); In re Pierce, 29 B.R. 612, 615 (Bankr. E.D.N.C. 1983).

B.

Although a bankruptcy court has the power to determine the scope of the discharge injunction, it must be careful not to render any advisory opinions in so doing. See Coffin v. Malvern Federal Savings Bank, 90 F.3d 851, 853-54 (3d Cir. 1996) (bankruptcy court finding that creditor would be free to exercise its state law remedies after discharge was advisory and improper); see generally In re Amdura Corp., 121 B.R.

862, 870 (Bankr. D. Colo. 1990) (finding that until former bankruptcy counsel files a fee application, any determination regarding counsel's right to payment from estate property is advisory and so impermissible). Similarly, disputes regarding a bankruptcy discharge that are not sufficiently ripe cannot be determined in federal courts. See In re Johnson-Allen, 871 F.2d 421, 423 (3d Cir. 1989), aff'd on other grounds sub nom. Pennsylvania Department of Public Welfare v. Davenport, 495 U.S. 552 (1990); see generally Sponaugle v. First Union Mortgage Corp., 2001 WL 1251209 (E.D. Pa. 2001) (holding, inter alia, that when a secured creditor demanded fees from a debtor/plaintiff but made no attempt to collect those fees, there was no case or controversy), aff'd, 2002 WL 1723894 (3d Cir. 2002); In re Heiland, 2001 WL 32658 (Bankr. E.D. Pa. 2001) (holding that a chapter 13 debtor's challenge to post-petition fees was advisory and therefore not justiciable when no demand for payment of those fees had been made); In re Epic Associates V, 62 B.R. 918, 930 (Bankr. E.D. Va. 1986). In addition, bankruptcy disputes that become moot are no longer justiciable. See, e.g., In re Wiley, 237 B.R. 677, 686 (Bankr. N.D. Ill. 1999); In re Leslie Fay Companies, Inc., 216 B.R. 117, 135-36 (Bankr. S.D.N.Y. 1997).

Although it is undisputed that Mr. Ciccimaro obtained a chapter 7 discharge, and while this discharge enjoins collection of prepetition claims against him, the debtor has never suggested that Ms. Ciccimaro's right to obtain an equitable distribution of marital property was discharged in bankruptcy. See, e.g., In re Ingebrethsen, 1998 WL 351730, at *4 (E.D. Pa. 1998); In re Roberge, 188 B.R. 366, 369 (E.D. Va. 1995); In re Scholl, 234 B.R. 636, 637 (Bankr. E.D. Pa. 1999). Nor does he seek to have the division of marital property adjudicated in this bankruptcy court, given

10

the expertise possessed by the state court in dealing with matters arising from divorce proceedings. See generally Carver v. Carver, 954 F.2d 1573 (11th Cir.), cert. denied, 506 U.S. 986 (1992); In re Greene, 1999 WL 138905, at *8 (Bankr. E.D. Pa.), aff'd, 1999 WL 689711 (E.D. Pa. Sep't 7, 1999); In re Nichols, 221 B.R. 275 (Bankr. N.D. Okla. 1998).

While Mr. Ciccimaro alleged, when he commenced this adversary proceeding, that both defendants were seeking an adjudication in state court that would reduce his equitable share of the sale proceeds of the marital residence in derogation of his bankruptcy discharge, the defendants have denied any improper conduct. Moreover, they have construed plaintiff's position as one seeking an improper advisory opinion, by which this court would instruct the state court in the proper manner to adjudicate the equitable distribution issue still before it. Indeed, the summary judgment motions filed by these two defendants are based largely upon the premise that the plaintiff is seeking an advisory opinion from this court and the complaint should be dismissed as non-justiciable.

Mr. Ciccimaro, upon reviewing the defendants' affidavits in support of summary judgment, now accepts their representations that they will honor his bankruptcy discharge in state court. (Indeed, as to Ms. Emore, her intervention motion in state court has been denied.) His counsel writes in a recently filed memorandum:

> The Debtor can, at this time, discern nothing in the Affidavits
> and submissions of the Defendants which is inconsistent with
> his proposed disposition of the Proceeding on July 31, 2006.
> Thus, substantively, the Proceeding could be deemed
> "settled."

Debtor's Undated Memorandum (filed on February 7, 2007) at 1-2.

11

C.

When an individual receives a chapter 7 discharge, a copy of the discharge order is mailed to the debtor and to all creditors. See Fed. R. Bankr. P. 4004(g). The chapter 7 discharge order is an official form, Form #18, and on its reverse side is a detailed explanation as to its legal effect. Id. Thus, every creditor in a bankruptcy case is notified of the effect of a bankruptcy discharge upon prepetition claims.

Were a chapter 7 debtor to move for a bankruptcy court to enjoin a creditor to obey the discharge injunction, such a request would be non-justiciable unless there is sufficient evidence that the creditor has or is about to violate that injunction. See generally In re Jacobs, 149 B.R. 983, 993 (Bankr. N.D. Okla. 1993) (injunctive relief is warranted where an administrative order to show cause was issued); cf. In re Richardson, 15 B.R. 925, 928 (Bankr. E.D. Pa. 1981) (dispute under section 525 was ripe due to imminent action by defendant), vacated in part, 27 B.R. 560 (E.D. Pa. 1982). Where the debtor offers no such evidence, the dispute is either not ripe, or purely advisory.

In this adversary proceeding, the defendants' motions for summary judgment assert that they have not taken any steps in state court that would render Mr. Ciccimaro's claims against them justiciable. Initially, Mr. Ciccimaro argued to the contrary. The plaintiff's present position, however, recognizes that the defendants have made sworn representations in this court that are consistent with the provisions of section 524(a). In addition, there is now a state court order dismissing Ms. Emore's intervention petition, which petition was the basis for the plaintiff's claim against her.

A civil action can become moot and thereby made non-justiciable during the course of litigation. See generally Spencer v. Kemna, 523 U.S. 1, 17-18 (1998). And this is true for bankruptcy proceedings seeking to enjoin creditor collection activities. See Rein v. Providian Financial Corp., 270 F.3d 895, 898 (9th Cir. 2001); In re LaBule, 250 B.R. 690, 692-93 (Bankr. D. Minn. 2000); In re Unroe, 144 B.R. 85, 89-90 (Bankr. S.D. Ind. 1992); see also In re Georges, 138 Fed. Appx. 403 (3d Cir. 2005) (non-precedential).

Although the defendants probably would not concede that either their actions in state court or their legal positions regarding the scope of the discharge injunction have changed, the present posture of the litigation is that defendant Emore's state court pleading—which served as the basis for the claim against her—has been dismissed, and both defendants have made representations that the plaintiff views as fully consistent with the discharge injunction. Despite plaintiff's invitation to issue an injunction against the defendants that directs them to act in a manner "consistent with their respective Affidavits filed in this court on January 25, 2007," Debtor's Undated Memorandum (filed on February 7, 2007) at 2, I am persuaded that, insofar as injunctive relief is concerned, there is no present case or controversy before me.

To now issue an injunction against the defendants would merely direct them to act in a manner consistent with their sworn representations and, for Ms. Emore, to act regarding a state court pleading no longer pending. Either the request for injunctive relief was never justiciable, as the defendants argue, or has become moot as the plaintiff implies.

And while I am aware that a defendant's voluntary cessation of improper conduct may not always render a dispute moot, see Spencer v. Kemna, 523 U.S. at 17; In

re Price, 370 F.3d 362, 365 (3d Cir. 2004), the plaintiff does not suggest that defendants will possibly later violate the discharge injunction:

> Along with its power to hear the case, the court's power to grant injunctive relief survives discontinuance of the illegal conduct. . . . The purpose of an injunction is to prevent future violations . . . and, of course, it can be utilized even without a showing of past wrongs. But the moving party must satisfy the court that relief is needed. The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive. The chancellor's decision is based on all the circumstances; his discretion is necessarily broad and a strong showing of abuse must be made to reverse it. To be considered are the bona fides of the expressed intent to comply, the effectiveness of the discontinuance and, in some cases, the character of the past violations.

United States v. W.T. Grant Co., 345 U.S. 629, 633 (1953) (citations omitted).

In this proceeding, there are now sworn statements by the two defendants that they will abide by the discharge injunction. The plaintiff is now satisfied by the defendants' representations made in connection with summary judgment. In addition, defendant's Emore's state court intervention petition has been dismissed. Compare In re Conseco, Inc., 330 B.R. 673, 679-80 (Bankr. N.D. Ill. 2005) (dismissal of lawsuit against debtor does not moot claim under discharge injunction where evidence demonstrates that a new lawsuit against the debtor would be filed). Were the defendants to assert positions in state court inconsistent with their affidavits, the plaintiff could so inform the state court which could grant the plaintiff appropriate relief.

Accordingly, I shall dismiss as non-justiciable the component of this adversary proceeding that sought injunctive relief against the defendants to enforce section 524(a).

III.

In responding to the defendants' summary judgment motions, the plaintiff makes no assertion that either compensatory or punitive damages are appropriate in this proceeding. He does contend, however, that he is entitled to attorney's fees. Debtor's Undated Memorandum (filed on February 7, 2007) at 2 ("[T]he only issue remaining is whether the Defendants are obligated to compensate the Debtor for his costs and fees expended in this Proceeding.").

The plaintiff is correct that a claim to entitlement to counsel fees can survive the mootness of the merits of the case. "[A] determination of mootness neither precludes nor is precluded by an award of attorneys' fees." Doe v. Marshall, 622 F.2d 118, 120 (5th Cir. 1980), cert. denied, 451 U.S. 993 (1981); see, e.g., Anderson v. U.S. Dept. of Health & Human Services, 3 F.3d 1383, 1384-85 (10th Cir. 1993). Therefore, although a request for injunctive relief may become moot, a claim for damages or attorney's fees can survive. See, e.g., Rein v. Providian Financial Corp., 270 F.3d at 898.

In general, the "American Rule" regarding attorney's fees in federal court cases, see generally, Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240 (1975), is applicable to bankruptcy litigation. See, e.g., Matter of Pro-Snax Distributors, Inc., 157 F.3d 414, 419 (5th Cir. 1998); In re Computer Learning Centers, Inc., 285 B.R. 191, 222 (Bankr. E.D. Va. 2002); In re Jessee, 77 B.R. 59, 61-62 (Bankr. W.D. Va. 1987). Thus, each party in a federal court dispute, including bankruptcy disputes, typically must pay his own counsel fees, regardless of the outcome.

There are exceptions to this general principle. Certain statutes may permit a prevailing party to obtain counsel fees from another party. See, e.g., 11 U.S.C. § 523(d); Fogle v. William Chevrolet/Geo, Inc., 275 F.3d 613 (7th Cir. 2001). One party may agree, by contract or stipulation, to pay the counsel fees incurred by another party. See, e.g., Rolex Watch U.S.A., Inc. v. Crowley, 74 F.3d 716 (6th Cir. 1996); In re Auto Specialties Mfg. Co., 18 F.3d 358 (6th Cir. 1994). In addition, "a court may assess attorneys' fees for the 'willful disobedience of a court order . . . as part of the fine to be levied on the defendant . . .' or when the losing party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons. . . .'" Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. at 258-59 (quoted citations omitted); see, e.g., Chambers v. NASCO, Inc., 501 U.S. 32, 45-46 (1991). Thus, a federal court may assess attorney's fees as part of a civil contempt sanction. See, e.g., Chambers v. NASCO, Inc., 501 U.S. at 53-54; Robin Woods Inc. v. Woods, 28 F.3d 396, 400 (3d Cir. 1994). It is also true that litigation brought in bad faith can result in an award of counsel fees to the prevailing party. See In re Hammett, 28 B.R. 1012, 1015 (E.D. Pa. 1983) ("It is now well-settled that a bankruptcy court may assess counsel fees against a party who has acted contemptuously or in bad faith."). "[T]he standard for applying counsel fees under the bad faith exception is quite stringent[.]" Keck v. Commercial Union Ins. Co., 758 F. Supp. 1034, 1041 (M.D. Pa. 1991).

Here, the discharge injunction statute does not contain any attorney's fees provision. Compare 11 U.S.C. § 362(h) (attorney's fees awarded for willful violation of the bankruptcy stay). Nor was there any agreement of the parties, nor stipulation, that provides for fee-shifting. However, as discussed earlier, a creditor's violation of the

16

discharge injunction may be addressed via civil contempt, and a finding of civil contempt allows for an award of counsel fees. See, e.g., In re Elias, 98 B.R. 332 (N.D. Ill. 1989); In re McNeil, 128 B.R. 603 (Bankr. E.D. Pa. 1991); see generally International Broth. of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local 249 v. Western Pennsylvania Motor Carriers Ass'n, 660 F.2d 76, 84 (3d Cir. 1981) ("The district court did not abuse its discretion by awarding Local 249 reasonable attorney's fees incurred in prosecuting the contempt."); LeMaster v. Bull, 581 F. Supp. 1170, 1174 (E.D. Pa. 1984) ("It is well settled in this circuit that 'in a contempt proceeding, the court may, in its discretion, award expenses, costs, and fees to the petitioner. These items are restricted to reasonable amounts incurred in prosecuting the petition.'") (quoting Lichtenstein v. Lichtenstein, 425 F.2d 1111 (3d Cir. 1970)).

At this point, I have made no determination that either defendant violated the discharge injunction. I have only concluded (possibly with the agreement of all parties) that there presently is no justiciable issue regarding injunctive relief; moreover, no damages have been sought by the plaintiff. The issue remains, however, whether the plaintiff is entitled to attorneys' fees and, if so, the reasonable amount. In this proceeding, the answer may now depend upon the appropriateness of the litigation at the outset. Only this court can and should resolve that issue. It cannot be relegated to state court.

Similarly, as I have not granted summary judgment to either defendant, Ms. Emore's counterclaim that this complaint was instituted in bad faith also remains. This too has an attorney's fees component (along with costs) as its remaining component.

17

Accordingly, an order shall be entered affording the parties ample opportunity to present their respective positions on the issue of counsel fees, and to determine Ms. Emore's counterclaim. Once again, I recommend to them that they resolve their dispute without further expense.[3]

---

[3] In other words, the litigation over attorneys' fees may well subsume the underlying dispute on the original merits of the complaint. Given that the parties agree on the proper manner for proceeding in the state court litigation, they should also find a consensual resolution for the remaining issues in this adversary proceeding.

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 7 |
| EUGENE CICCIMARO | : | |
| Debtor | : | Bankruptcy No. 03-35430bif |
| EUGENE CICCIMARO | : | |
| Plaintiff | : | |
| v. | : | |
| JACQUELINE F. EMORE and MARIA EMORE CICCIMARO | : | Adversary No. 06-0295 |
| Defendants | : | |

.................................................

ORDER

.................................................

AND NOW, this 12th day of March 2007, for the reasons stated in the accompanying memorandum, it is hereby ordered as follows:

1. Plaintiff's claim for injunctive relief under 11 U.S.C. § 524(a) is dismissed as non-justiciable.

2. Plaintiff's claim for attorneys' fees and costs as a component of civil contempt, and defendant Emore's counterclaim demanding attorneys' fees and costs shall be tried on May 21, 2007 at 2:00 p.m. in Bankruptcy Courtroom #2, 900 Market Street, Philadelphia, Pennsylvania.

BRUCE FOX
United States Bankruptcy Judge

copies to:

David A. Scholl, Esq.
Regional Bankruptcy Center of SE PA
Law Office of David A. Scholl
6 St Albans Avenue
Newtown Square, PA 19073

Carole L. Hendrick, Esq.
Attorney at Law
3927 Mill Road
Collegeville, PA 19426

Christina M. Rogomentick, Esq.
Willig, Williams & Davidson
1814 Chestnut Street
Philadelphia, PA 19103

Ms. Barbara Townsend, Courtroom Deputy