UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 7 |
| EUGENE CICCIMARO | : | |
| Debtor | : | Bankruptcy No. 03-35430bif |

| | | |
|---|---|---|
| EUGENE CICCIMARO | : | |
| Plaintiff | : | |
| v. | : | |
| JACQUELINE F. EMORE and | : | |
| MARTA EMORE CICCIMARO | | Adversary No. 06-0295 |
| Defendants | : | |

.................................................

MEMORANDUM

.................................................

     The sole remaining issues of this adversary proceeding are the request for award of attorney's fees made by the debtor/plaintiff Eugene Ciccimaro, along with a counter-request for attorney's fees asserted by defendant Jacqueline F. Emore.  A combined fee hearing was held, at which time the parties stipulated that "the facts of record in this matter, and the documents, exhibits and affidavits of record in this matter, are sufficient evidence" without any additional testimony for the court to determine whether to award counsel fees to either party.  Ex. J-1.  Despite that stipulation, the two parties also offered various documents in evidence at the hearing.

     The plaintiff contends that Ms. Emore and Marta Ciccimaro violated the discharge injunction found in 11 U.S.C. § 524(a), constituting civil contempt and warranting an award of counsel fees in the amount of $17,756.31.  Ms. Emore counters

that the plaintiff filed this adversary proceeding in bad faith and that she should be awarded counsel fees of $7,600. Mrs. Ciccimaro opposes plaintiff's request for fees. And at oral argument, her counsel opined that neither party should be awarded counsel fees.

The following facts underlie this fee dispute.

## I.

On October 20, 2003, Mr. Ciccimaro filed a voluntary petition in bankruptcy under chapter 7. He received a chapter 7 discharge under 11 U.S.C. § 727 on March 4, 2004. Thereupon, his bankruptcy case was closed on March 8, 2004, pursuant to 11 U.S.C. § 350(a).

During the pendency of his 2003 bankruptcy case, the debtor and Mrs. Ciccimaro were opposing parties in a divorce action in the Montgomery County Court of Common Pleas, docketed in the state court at No. 03-00043. In Mr. Ciccimaro's bankruptcy schedules, he listed his wife as a co-debtor (but not a creditor) and Ms. Emore as an unsecured creditor.[1]

In July 2004, after the bankruptcy case was closed, Ms. Emore brought suit against Mrs. Ciccimaro (who is her daughter) in state court. This civil action was based upon a loan made by Ms. Emore to the Ciccimaros prior to Mr. Ciccimaro's bankruptcy

---

[1] The scheduled debt to Ms. Emore is not listed as a joint obligation on schedule F; nor is it listed on schedule H, which discloses the co-debtors and their obligations.

filing.  Ms. Emore obtained a judgment against Mrs. Ciccimaro by default in the amount

of $71,414.88 on March 16, 2005.

On May 12, 2005, the state court entered a decree in divorce.  That order

further provided that issues of equitable distribution of marital property, alimony, and

counsel fees would be determined later.  In December 2005, Mrs. Ciccimaro submitted a

statement to the state court requesting that she be awarded all the equity in the marital

home as part of equitable distribution, given the effect of Mr. Ciccimaro's bankruptcy

discharge.

Prior to any resolution of equitable distribution, and after learning of Ms.

Emore's judgment against Mrs. Ciccimaro, on January 11, 2006 Mr. Ciccimaro filed an

emergency petition in state court seeking to join Ms. Emore as a party in the divorce

litigation, and seeking to enjoin Ms. Emore from executing on her judgment against the

proceeds of the impending sale of the marital home as well as from any other property.

This emergency petition also requested that Mr. Ciccimaro be permitted to obtain

discovery regarding the debt underlying the default judgment and to stay the divorce

proceedings while such discovery took place, and that the proceeds from the sale of the

marital residence be held in escrow.

Thereafter, on January 20, 2006, Ms. Emore filed her own petition to

intervene in the divorce litigation.  Her intervention petition alleged that she had lent to

the Ciccimaros $65,000 to aid them in the purchase of their family residence, and

mortgaged her home to obtain those funds.  When the loan payments ceased, she brought

suit against her daughter and obtained a judgment.  She further asserted that intervention

was appropriate as her daughter has no assets that are not marital assets.  On the same

date, January 20, 2006, she filed a response to Mr. Ciccimaro's petition, requesting that

his joinder petition be granted in part for the same reasons that her own petition

articulated, and also supporting his request for the escrowing of the sale proceeds of the

marital residence.

Based upon Ms. Emore's petition to intervene, in May 2006 Mr. Ciccimaro

withdrew his own petition to join Ms. Emore as a party in the divorce action.

It is undisputed that the marital residence was sold in 2006 and the net

proceeds of sale, $111,000, were placed in escrow.  As of the date of the instant hearing

seeking counsel fees, those sale proceeds were still in escrow awaiting a determination by

the state court regarding equitable distribution.

On June 5, 2006, after successfully reopening his closed chapter 7 case, Mr.

Ciccimaro commenced this adversary proceeding by filing the above-captioned

complaint, asserting that the lawsuit by Ms. Emore against Mrs. Ciccimaro and the

subsequent entry of default judgment were "collusive," Complaint, ¶¶ 10-11, and that Ms.

Emore's petition to intervene in the divorce action was designed "to obtain the collection

of her judgment [against Mrs. Ciccimaro] in full from the proceeds of the marital estate,"

which would "eviscerate the effect of the [bankruptcy] discharge . . . ." Id., ¶¶ 13-14.

Furthermore, the complaint asserted that Mrs. Ciccimaro "seek[s] to eviscerate the effect

of the [bankruptcy] discharge . . . by requesting [in state court] that the elimination of his

obligation to pay . . . [joint] debts be considered in the equitable distribution aspects of

the Divorce Action." Id., ¶ 16.  Based upon these allegations, Mr. Ciccimaro sought a

ruling that both defendants were in civil contempt and that he, as plaintiff, was entitled to

an injunction, damages, costs and attorney's fees from the defendants.  Complaint, ¶ 19.

4

Mrs. Ciccimaro then filed an answer to the complaint, denying that she collusively participated in any state court lawsuits and rejecting the allegation that any actions taken in state court by her violated section 524 of the Bankruptcy Code.  Ms. Emore filed a similar response, denying any collusion or improper conduct in state court. Ms. Emore also filed a counterclaim asserting that the plaintiff's complaint was filed in bad faith (to which the plaintiff filed an answer denying such misconduct).  Her counterclaim sought attorney's fees and costs.

On February 20, 2007, the state court denied Ms. Emore's petition to intervene in the divorce proceedings.  Prior to that ruling various affidavits were filed in this adversary proceeding.  Ms. Emore affirmed that her motion to intervene in the state court litigation was filed as "a direct result of [the debtor's] Motion to Add me as a Party Defendant," and was intended to afford her notice of any distributions to Mrs. Ciccimaro. Emore Affidavit, ¶¶ 10, 12.  She further averred that if she were granted leave to intervene, she would seek repayment of her outstanding judgment only from Mrs. Ciccimaro's award of marital property under equitable division.  Id., ¶ 13.

Mrs. Ciccimaro filed her own affidavit acknowledging that she is "precluded from requesting that the State Court obligate my husband . . . to pay for or be responsible for the debts that were discharged in his Bankruptcy case as to do so would be in violation of his Bankruptcy discharge[.]"  Ciccimaro Affidavit, ¶ 3.  She does "intend" to request that the state court consider all of her outstanding debts when adjudicating her claims for equitable distribution, alimony and counsel fees.  Id., at ¶ 4.

Mr. Ciccimaro offered an affidavit from his state court divorce attorney, Margaret S. Phiambolis, Esquire.  She averred that at a state court hearing in December

5

2005, Mrs. Ciccimaro submitted a statement requesting that the state court award her all
of the equity in the marital residence "to offset the debt that husband is no longer
responsible for as a result of his bankruptcy filing." Phiambolis Affidavit, ¶ 8.2. She
further asserted that the intervention petition filed by Ms. Emore sought relief to protect
her interests in all the marital assets. Id., ¶ 8.4. Ms. Phiambolis also claimed that Ms.
Emore sought to have her attorney "be one of the attorney escrow agents for the
undistributed proceeds from the sale of marital home." Id., ¶ 8.7.

Mr. Ciccimaro, through his bankruptcy counsel, acknowledged that the
statements of the two defendants expressed in their affidavits were consistent with section
524(a) and his bankruptcy discharge, but represented a change from their pre-litigation
positions. The defendants denied any change in position.[2] Based upon the current
positions of the parties, by memorandum and order issued on March 12, 2007 in
adjudicating defendants' motions for summary judgment, I dismissed Mr. Ciccimaro's
request for injunctive relief as non-justiciable. Furthermore, the plaintiff did not contend
that he suffered any damages or costs from defendants' conduct. Ms. Emore has not
referred to any court costs. Thus, the only issues remaining involve cross-claims for
attorney's fees.

Ms. Emore's attorney has submitted time records asserting that she has
purportedly spent 38 hours (measured in quarter-hour intervals) in representing her client

---

[2]Ms. Phiambolis' affidavit also relied on a document purportedly drafted during a
settlement negotiation wherein the debtor proposed four provisions to resolve this proceeding
and then wrote the word "No" next to each provision. Upon my review (as the defendants have
lodged no objection), this document does not establish clearly that the defendants' positions were
different from those articulated in their state court pleadings and in documents filed with this
court. The defendants may have proposed counter-language not reflected in this document. They
may have believed that such provisions were unnecessary.

in this dispute since May 18, 2006, and seeks compensation for 38 hours of service at a

rate of $200 per hour.  Mr. Ciccimaro, in turn, seeks an award of $11,396.31 for 35.57

hours of time purportedly spent by his bankruptcy counsel since May 10, 2006, at an

hourly rate of $300, plus costs at $725.31.  Moreover, the plaintiff also requests an

additional $6,360, for 30.60 hours of time purportedly spent by his state court attorney at

$225 per hour.[3]

II.

A.

As I noted in the March 12th memorandum concerning summary judgment,

in general, the "American Rule" regarding attorney's fees in federal court cases, see, e.g.,

Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240 (1975); Citicorp

Venture Capital, Ltd. v. Committee of Creditors Holding Unsecured Claims, 323 F.3d

228, 233 (3d Cir. 2003), is applicable to bankruptcy litigation.  See, e.g., Matter of

Pro-Snax Distributors, Inc., 157 F.3d 414, 419 (5th Cir. 1998); In re Computer Learning

Centers, Inc., 285 B.R. 191, 222 (Bankr. E.D. Va. 2002); In re Jessee, 77 B.R. 59, 61-62

---

[3]The state court attorney normally billed Mr. Ciccimaro at a rate of $175 per hour, but seeks a higher rate in this proceeding.  And Mr. Ciccimaro's bankruptcy counsel's records reflect hourly rates at less than $300, with a "billings worksheet" listing a total obligation by the plaintiff of $7,804.89.  The exhibit also attaches a "billing worksheet summary" for two clients different from Mr. Ciccimaro.  Ex. D-4.  Moreover, the hours detailed in this exhibit are less than 35.57.

(Bankr. W.D. Va. 1987).  Thus, each party in a federal court dispute, including

bankruptcy disputes, typically must pay his own counsel fees, regardless of the outcome.

"There are, however, numerous exceptions to this rule."  Citicorp Venture

Capital, Ltd. v. Committee of Creditors Holding Unsecured Claims, 323 F.3d at 233.

Certain statutes may permit a prevailing party to obtain counsel fees from another party.

See, e.g., 11 U.S.C. § 523(d); Fogle v. William Chevrolet/Geo, Inc., 275 F.3d 613 (7th

Cir. 2001).  One party may agree, by contract or stipulation, to pay the counsel fees

incurred by another party.  See, e.g., Rolex Watch U.S.A., Inc. v. Crowley, 74 F.3d 716

(6th Cir. 1996); In re Auto Specialties Mfg. Co., 18 F.3d 358 (6th Cir. 1994).  In addition,

"a court may assess attorneys' fees for the 'willful disobedience of a court order . . . as

part of the fine to be levied on the defendant . . .' or when the losing party has 'acted in

bad faith, vexatiously, wantonly, or for oppressive reasons . . . .'"  Alyeska Pipeline

Service Co. v. Wilderness Society, 421 U.S. at 258-59 (quoted citations omitted); accord,

e.g., Chambers v. NASCO, Inc., 501 U.S. 32, 45-46 (1991);  Thus, a federal court may

assess attorney's fees as part of a civil contempt sanction.  See, e.g., Chambers v.

NASCO, Inc., 501 U.S. at 53-54; Robin Woods Inc. v. Woods, 28 F.3d 396, 400 (3d Cir.

1994).

Mr. Ciccimaro asserts that the actions of both defendants taken in

connection with the state court divorce and equitable distribution proceedings violated the

discharge injunction he obtained at the conclusion of his chapter 7 bankruptcy case.  He

seeks attorney's fees as a civil contempt sanction for such violation.  Ms. Emore, in turn,

denies acting improperly and contends that this adversary proceeding was commenced by

the debtor in bad faith, which conduct entitles her to an award of attorneys' fees.  See

generally In re Orion Refining Corp., 2007 WL 2111053, at *13 (Bankr. D. Del. 2007).

I shall first consider the plaintiff's demand for fees against the two

defendants.  Then I will consider defendant Emore's counter-demand for fees.  As will be

discussed, both requests shall be denied without considering the reasonableness of the

fees.

B.

The statutory discharge injunction is found in 11 U.S.C. § 524(a), which

provides in part:

> (a) A discharge in a case under this title--
> ***
> (2) operates as an injunction against the commencement or
> continuation of an action, the employment of process, or an
> act, to collect, recover or offset any such debt as a personal
> liability of the debtor, whether or not discharge of such debt is
> waived[.]

In general, section 524(a) prohibits creditors from "collecting debts as

personal liabilities from a discharged debtor."  In re Meyers, 344 B.R. 61, 64 (Bankr. E.D.

Pa. 2006); see also In re Joubert, 411 F.3d 452, 456 (3d Cir. 2005) ("Under § 524(a)(2), a

discharge operates as an injunction against a broad array of creditor efforts to collect

debts as personal liabilities of the discharged debtor."); Matter of Paeplow, 972 F.2d 730,

733 (7th Cir. 1992) ("[Section] 524 provides that discharge enjoins any former creditors

from commencing any action to collect a 'personal liability' of the debtor").  Section

524's discharge injunction was designed "to insure that once a debt is discharged, the

9

debtor will not be pressured in any way to repay it."  Green v. Welsh, 956 F.2d 30, 33 (2d

Cir. 1992) (citing S. Rep. No. 95-989, 95th Cong., 2d Sess. 80-81 (1978)).  The protection

afforded by the discharge injunction is designed to aid the debtor in achieving his

financial fresh start, which is one of the central purposes of the Bankruptcy Code.  Id.[4]

     Congress has not provided a statutory mechanism for the enforcement of the

discharge injunction.  Therefore, courts have long relied upon the common law remedy of

civil contempt.  See, e.g., Walls v. Wells Fargo Bank, N.A., 276 F.3d 502, 507 (9th Cir.

2002); Matter of National Gypsum Co., 118 F.3d 1056, 1063 (5th Cir. 1997); Bynum v.

Cavalry Portfolio Services, L.L.C., 2006 WL 1401619, at *2 (N.D. Okla. 2006); In re

Elias, 98 B.R. 332 (N.D. Ill. 1989); In re McNeil, 128 B.R. 603, 607 (Bankr. E.D. Pa.

1991) ("Enforcement of § 524 may include holding violators in contempt of court for

attempts to collect discharged debts."); In re Wagner, 87 B.R. 612 (Bankr. C.D. Cal.

1988).  It has been accepted that the power to address such infractions must exist or the

statutory injunction found in section 524(a) would be hollow.  See generally In re Meyers,

344 B.R. at 64-65.

     Bankruptcy courts can invoke their civil contempt power through 11 U.S.C.

§ 105, the Bankruptcy Code version of the All Writs Act.  See In re Pratt, 462 F.3d 14, 17

(1st Cir. 2006); In re Anderson, 348 B.R. 652, 661 (Bankr. D. Del. 2006); In re Mooney,

340 B.R. 351, 359-60 (Bankr. E.D. Tex. 2006).  "Sanctions for civil contempt serve two

purposes: (1) to coerce the disobedient party into compliance with the court's order; and

---

[4]Section 524(a)(2) expressly states that the injunction against creditor collection
activity is limited to the "personal liability of the debtor[.]"  Thus, to the extent that a creditor
seeks in rem relief, no violation of the discharge injunction occurs.  See, e.g., Johnson v. Home
State Bank, 501 U.S. 78, 83 (1991); In re Factor, 2007 WL 2128309 (3d Cir. 2007).

(2) to compensate for losses sustained by the disobedience." In re Meyers, 344 B.R. at

66. A bankruptcy court may sanction the offending party by awarding the debtor actual

damages, attorneys' fees, and in some instances, punitive damages. See In re Mooney,

340 B.R. at 360 (citing In re Cherry, 247 B.R. 176, 187 (Bankr. E.D. Va. 2000)).

In general, a bankruptcy court may impose civil contempt sanctions when

there is evidence that "(1) a valid order of the court existed; (2) the defendant had

knowledge of the order; and (3) the defendant disobeyed the order." In re Meyers, 344

B.R. at 65; In re Bodnar, 1998 WL 480856, *5 (E.D. Pa. 1998). The debtor must prove

each of the three prongs by clear and convincing evidence. See Harris v. City of

Philadelphia, 47 F.3d 1311, 1321 (3d Cir. 1995) ("A finding of civil contempt must be

supported by clear and convincing evidence."). The party seeking a finding of civil

contempt has an initial burden of persuasion. See, e.g., Rolex Watch U.S.A., Inc. v.

Crowley, 74 F.3d 716, 720 (6th Cir. 1996); In re Hammett, 28 B.R. 1012, 1018 (E.D. Pa.

1983).

Here, there is no dispute that a discharge order was entered in March 2004

and that both defendants were aware of that order before they took positions in the state

court divorce action of which the debtor now complains. See In re Meyers, 344 B.R. at

65; affidavits of defendants Ciccimaro and Emore. Thus, the first two requirements for

civil contempt are established. It is the third element that divides these parties. If the

defendants knew of the debtor's bankruptcy filing and knew of the entry of discharge

before they commenced or continued prosecuting an action to collect a discharged,

prepetition debt, then civil contempt sanctions, including attorneys' fees, may be

warranted. See generally In re Elias, 98 B.R. at 337; In re Meyers, 344 B.R. at 66; In re

11

Matthews, 184 B.R. 594, 599 (Bankr. S.D. Ala. 1995); In re Penrod, 163 B.R. 62, 63

(Bankr. W.D. Pa. 1994); In re McNeil, 128 B.R. 603, 607 (Bankr. E.D. Pa. 1991); In re

Rhyne, 59 B.R. 276 (Bankr. E.D. Pa. 1986); In re Pierce, 29 B.R. 612, 615 (Bankr.

E.D.N.C. 1983).

       The third requirement for the imposition of sanctions compels the debtor to

demonstrate by clear and convincing evidence that the defendants disobeyed the

discharge order.  The debtor argues that Mrs. Ciccimaro violated the discharge injunction

by requesting that the state court judge consider her husband's discharged debts when

equitably distributing the marital property, including the proceeds from the sale of the

marital home.  As to Ms. Emore, the debtor argues that she violated his discharge

injunction by attempting to intervene in the couple's divorce proceedings in order to

collect on her judgment against her daughter before the property was equitably distributed

between the Ciccimaros.  The debtor contends that these actions eviscerate the effect of

his discharge.

       The defendants counter that any actions taken by them in the state court

were not attempts to collect on any prepetition discharged obligations.  For the following

reasons, I conclude that the debtor has not met his burden on this issue.

       The debtor has never taken the position in this proceeding that his March

2004 chapter 7 discharge precluded the equitable division of marital property, see, e.g., In

re Ingebrethsen, 1998 WL 351730, at *4 (E.D. Pa. 1998); In re Roberge, 188 B.R. 366,

369 (E.D. Va. 1995); In re Scholl, 234 B.R. 636, 637 (Bankr. E.D. Pa. 1999), or that the

bankruptcy court should adjudicate the division of such property.  See generally Carver v.

Carver, 954 F.2d 1573 (11th Cir.), cert. denied, 506 U.S. 986 (1992); In re Greene, 1999

WL 138905, at *8 (Bankr. E.D. Pa.), aff'd, 1999 WL 689711 (E.D. Pa. Sep't 7, 1999); In re Nichols, 221 B.R. 275 (Bankr. N.D. Okla. 1998).

Pennsylvania law, 23 Pa.C.S.A. § 3502, sets out the factors which are relevant to a state court's division of marital property.  They include "[t]he economic circumstances of each party at the time the division of property is to become effective." The extent to which a state court, when applying this factor in dividing marital property, can properly consider that one spouse remains liable for joint debts discharged in bankruptcy by another spouse is an issue that has divided courts.  See generally In re Brabham, 184 B.R. 476, 486 (Bankr. D.S.C. 1995).

Some courts have concluded that the efforts of a non-debtor spouse to modify a pre-bankruptcy marriage settlement agreement or a state court equitable distribution award in light of the debtor/spouse's bankruptcy discharge violates section 524(a)(2) and the discharge injunction.  See, e.g., In re Fluke, 305 B.R. 635 (Bankr. D. Del. 2004); In re Tostige, 283 B.R. 462 (Bankr. E.D. Mich. 2002).  Other courts have held that an alimony award may be modified in light of a discharge injunction.  See In re Siragusa, 27 F.3d 406, 407 (9th Cir. 1994).

Two decisions, including one from this district, suggest that a non-debtor spouse's advocacy for the state court, in determining the equitable division of marital property, to consider the effect of a bankruptcy discharge does not violate the discharge injunction.  See In re Abma, 215 B.R. 148, 153 (Bankr. N.D. Ill. 1997):

> Thus, because any prepetition claim Mr. Abma may have had for "loans" was discharged on February 9, 1997, along with Debtor's other debts, Mr. Abma has been enjoined by the discharge injunction under Code § 524 from pursuing any monetary claim for loans except as a factual basis for determining equitable distribution of marital property under

> Illinois law. This will not constitute an "offset" forbidden by
> § 524(a).

(emphasis added); In re Hetrick, 1994 WL 326378, at *2 (Bankr. E.D. Pa. 1994).

The evidentiary record does not clearly reflect that Mrs. Ciccimaro acted in a manner intended to pressure Mr. Ciccimaro to pay discharged claims or to even to penalize him for obtaining a chapter 7 discharge. In reviewing the plaintiff's memorandum and the affidavit submitted by his state court attorney, Mr. Ciccimaro focuses upon an initial hearing statement submitted by Mrs. Ciccimaro's counsel to the state court in December 2005, which stated in part:

> Wife requests that the court award to her the equity in the
> marital residence to offset the marital debt the husband is no
> longer responsible for as a result of his bankruptcy filing.

Given the uncertain state of the law, this submission may be permissible advocacy under 23 Pa.C.S.A. § 3502. See In re Abma, 215 B.R. at 153; In re Hetrick, 1994 WL 326378, at *2. Indeed, it may be no different from her current position as expressed in an affidavit considered acceptable to Mr. Ciccimaro.[5]

Whether to award counsel fees for civil contempt, including the violation of the discharge order is discretionary. See, e.g., Matter of Terrebonne Fuel and Lube, Inc., 108 F.3d 609, 613 (5th Cir. 1997) ("The bankruptcy court's decision to impose sanctions [under section 105(a) for civil contempt] is discretionary."); In re Del Mission Limited, 98 F.3d 1147, 1152-53 (9th Cir. 1996); International Broth. of Teamsters, Chauffeurs,

---

[5]The plaintiff also complains that Mrs. Ciccimaro wanted Ms. Emore's counsel to be included among the escrow agents holding the net proceeds of sale of the marital residence. Affidavit of Margaret S. Phiambolis, Esquire, ¶¶ 8.5-8.7. As will be mentioned below, Ms. Emore held a security interest against Mrs. Ciccimaro's interest in the proceeds of sale of the marital realty. Thus, this action also is not a clear violation of section 524(a); moreover, it apparently was not agreed to and the title company was chosen as escrow agent. See id., ¶ 8.6.

Warehousemen and Helpers of America, Local 249 v. Western Pennsylvania Motor

Carriers Assoc., 660 F.2d 76, 84 (3d Cir. 1981); In re Federal Facilities Realty Trust, 227

F.2d 657, 658 (7th Cir. 1955) ("All authorities seem to agree that the assessment of

expenses and attorney's fees incurred in a civil contempt case against a contemnor is

discretionary.").  "Where there is ground to doubt the wrongfulness of the conduct, he

should not be adjudged in contempt."  Robin Woods Inc. v. Woods, 28 F.3d at 399.

  Given the lack of evidence clearly reflecting a violation of the discharge

injunction and given the unsettled nature of the scope of the bankruptcy discharge as it

applies to equitable distribution matters in state court, and given the lack of any need to

provide injunctive relief as well as the lack of any damage to the debtor, I conclude that

the better exercise of discretion is to deny plaintiff's request for attorneys' fees from Mrs.

Ciccimaro.  See also In re Fluke, 305 B.R. at 644 (finding a violation of the discharge

injunction but declining to award counsel fees); cf. In re University Medical Center, 973

F. 2d 1065, 1088 (3d Cir. 1992) (award of attorneys' fees under section 362(h) were

unwarranted where "the law regarding the application of the [bankruptcy] stay to the

Department's actions was sufficiently uncertain that HHS reasonably could have believed

its actions to be in accord with the stay.").


C.


  Mr. Ciccimaro claims that by seeking to intervene in the state court divorce

proceedings, Ms. Emore intended to assert a claim against all of the net proceeds of the

sale of the marital residence before they were distributed, thereby allowing Ms. Emore to

collect on her discharged claim from property that otherwise would have been distributed to him. Such action, he argues, violates section 524(a)(2). Again, however, I find that clear evidence of a violation of the discharge injunction was not presented.

Apparently, Ms. Emore's attempt to intervene in the Ciccimaro's divorce proceeding was made in response to debtor's emergency petition to join Ms. Emore as a defendant in those same proceedings. Thus, Mr. Ciccimaro cannot complain that the attempt to intervene, by itself, which was consistent with his joinder request, violated his bankruptcy discharge. Instead, he focuses upon allegations of the intervention petition.

The "Wherefore Clause" of the intervention petition stated:

WHEREFORE, Intervenor respectfully requests this Honorable Court grant her request to intervene in the divorce proceedings in order to protect her interests in the judgment against Plaintiff and in the marital assets.

And paragraph 17 of the petition averred:

Petition [sic] believes and avers that Plaintiff has no assets independent of marital assets.

Mr. Ciccimaro was the plaintiff in the state court divorce action, not Mrs. Ciccimaro. Relying upon the references to the "plaintiff" just quoted, he contends in this adversary proceeding that the intervention petition demonstrates the intent of Ms. Emore to collect her discharged claim against him from marital assets distributed in the divorce proceeding.

Ms. Emore argues though that her reference to the "plaintiff" in the above-quoted sections of the intervention petition was a mistake. She intended only to alert the state court to her judgment claim against defendant Mrs. Ciccimaro. And upon reading the entire intervention petition, I agree. The petition avers that she sued only Mrs.

16

Ciccimaro, whom she referred to as the plaintiff in the divorce action, Petition, ¶ 13, and

against whom she obtained a judgment.  Id., ¶¶ 15-16.  In the intervention petition, Mrs.

Ciccimaro is first identified as the defendant, ¶¶ 3, but then is later referred to as the

plaintiff.  Mr. Ciccimaro is also referred to in the petition as the plaintiff.  Id., ¶¶ 2, 19.

A sloppy pleading, for which intervention relief was later denied by the

state court, does not clearly demonstrate a violation of the chapter 7 discharge.

Furthermore, Ms. Emore has stated that it was her intention "to protect here [sic] interests

in the marital assets which are the only asset of Marta Ciccimaro," Petition to Intervene,

and to "be paid from the distribution of marital assets awarded to Marta Emore Ciccimaro

before any of said assets are paid out to Marta Emore Ciccimaro." Affidavit of Jacqueline

F. Emore.  By virtue of a judgment against Mrs. Ciccimaro and the entry of the divorce

decree in May 2005, the marital home was no longer owned by the entireties, and Ms.

Emore held a judgment lien against Mrs. Ciccimaro's interest in that realty.  See Bayer v.

Bayer, 65 Pa. D. & C.2d 615 (C.P. Luz. Co. 1974); Weir v. Taylor, 45 Pa. D. & C. 2d 197

(C.P. Chest. Co. 1967) (judgment entered against wife was inchoate lien against entireties

property which was executable, without the need for revival, upon the entry of a divorce

decree).

I note that

[c]ivil contempt is a "severe remedy." Nelson Tool & Mach.
Co. v. Wonderland Originals, Ltd., 491 F. Supp. 268 (E.D. Pa.
1980).  Violation of a court order must be proved by "clear
and convincing evidence."  Robin Woods, 28 F.3d at 399
(citations omitted); Harley-Davidson, 19 F.3d [142] at 146.  If
there is "ground to doubt the wrongfulness" of Dienes's
conduct, the court should not find him in contempt.  Harris v.
City of Philadelphia, 47 F.3d 1342, 1350 (3d Cir.1995);
Robin Woods, 28 F.3d at 399.

17

In re Bodnar, 1998 WL 480856, at *5 (E.D. Pa. 1998) (footnote and additional citations omitted); see United States v. Garden Homes Management Corp., 104 Fed. Appx. 796, 798 (3d Cir. 2004) ("The party moving the court to levy a civil contempt sanction bears a heavy burden to demonstrate the nonmovant's guilt with clear and convincing evidence.").

Accordingly, Mr. Ciccimaro has not demonstrated by clear and convincing evidence that defendant Emore intended to collect on her discharged debt from assets awarded to him by the state court. Therefore, I find that Ms. Emore should not be sanctioned for violating the debtor's bankruptcy discharge and the debtor's request for counsel fees will be denied accordingly.[6]

D.

Finally, defendant Emore filed a counterclaim against the debtor for attorneys' fees, arguing that the debtor's complaint in this forum was filed in bad faith, to harass, intimidate, and cause Ms. Emore to expend additional attorney fees and costs. Upon review, I conclude there is insufficient evidence that the plaintiff has acted "in bad faith, vexatiously, or wantonly" during the course of his litigation with the trustee, nor exhibited "a willful and persistent defiance of the law." Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. at 258-59; see Straub v. Vaisman & Co., Inc., 540 F.2d 591,

---

[6]For reasons stated earlier, I also find unpersuasive the debtor's complaint that Ms. Emore violated the discharge injunction by seeking to have her counsel made an escrow agent of the realty sale proceeds. The defendant held a lien on the wife's interest in those proceeds.

598-99 (3d Cir. 1976); In re Hammett, 28 B.R. at 1018. "[T]he standard for applying

counsel fees under the bad faith exception is quite stringent," Keck v. Commercial Union

Ins. Co., 758 F. Supp. 1034, 1041 (M.D. Pa. 1991), and has not been established in this

adversary proceeding.

The bad faith exception is meant to be punitive in nature. Keck v.

Commercial Union Ins. Co., 758 F.Supp. at 1041. "An award of attorney fees under the

exception is warranted only when the conduct reflects a 'willful and persistent defiance of

the law.'" Id. (quoting Straub v. Vaisman & Co., 540 F.2d 591, 598 (3d Cir. 1976)).

As noted earlier, Ms. Emore's intervention petition in the state court

divorce action was carelessly drafted, and in some averments it can be read as intending,

if the petition were granted, to attempt to recover against assets of the "plaintiff": Mr.

Ciccimaro. I appreciate that no such collection effort was intended, but it is not bad

faith—given the narrow scope of that phrase—for Mr. Ciccimaro to be concerned and

thus to seek injunctive relief in this court.

Therefore (as suggested by co-defendant Mrs. Ciccimaro), the counterclaim

for counsel fees will also be denied.[7]

An appropriate order shall be entered denying both fee requests.

---

[7]In addition to federal common law, Ms. Emore seeks to rely upon state law, 42 Pa. C.S.A. § 2503(9), for an award of fees. Although this statutory provision permits fee-shifting when litigation is filed in bad faith, see P. Liedtka Trucking, Inc. v. James H. Hartman and Son, Inc., 537 F. Supp. 381, 382 (E.D. Pa. 1982), in federal litigation its applicability is limited to cases arising under diversity jurisdiction. See Seneca v. New Hope Borough, 2002 WL 321663, at *1 n.1 (E.D. Pa. 2002); Reitz v. Dieter, 840 F. Supp. 353, 354-55 (E.D. Pa. 1993). Since subject matter jurisdiction over this adversary proceeding is predicated under 28 U.S.C. §§ 157 and 1334, and not the diversity statute, 28 U.S.C. § 1332, this state law provision could not justify an award of counsel fees in this dispute. See Raymark Industries, Inc. v. Baron, 1997 WL 359333, at *12 (E.D. Pa. 1997) ("Therefore, § 2503 fees are not available for matters pending in the bankruptcy court or the federal district court.").

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re                                          :        Chapter 7

EUGENE CICCIMARO                               :

            Debtor                             :        Bankruptcy No. 03-35430bif
_____

EUGENE CICCIMARO                               :

            Plaintiff                          :

            v.                                 :

JACQUELINE F. EMORE and                        :
MARIA EMORE CICCIMARO                                   Adversary No. 06-0295
            Defendants                         :
_____

.................................................

ORDER

.................................................

        AND NOW this 29th day of August 2007, for the reasons stated in the

accompanying memorandum, it is hereby ordered as follows:

        1. Plaintiff's demand for an award of attorneys' fees against the defendants

is denied;

        2. Defendant Ms. Emore's counterclaim demand for an award of attorneys'

fees against the plaintiff is denied.

        It is further ordered that the clerk, upon docketing this order, shall mark this

adversary proceeding closed.  Moreover, the clerk shall re-close the underlying chapter 7

bankruptcy case pursuant to 11 U.S.C. § 350(a).

_____
            BRUCE FOX
        United States Bankruptcy Judge

copies to:

David A. Scholl, Esq.
Regional Bankruptcy Center of SE PA
Law Office of David A. Scholl
6 St Albans Avenue
Newtown Square, PA 19073

Carole L. Hendrick, Esq.
Attorney at Law
3927 Mill Road
Collegeville, PA 19426

Christina M. Rogomentick, Esq.
Willig, Williams & Davidson
1814 Chestnut Street
Philadelphia, PA 19103

Timothy P. McGrath, Esquire, Clerk of Court